**UNITED STATES BANKRUPTCY COURT**

**MIDDLE DISTRICT OF LOUISIANA**

---------------------------------------------------------------x
In re                                                          :
                                                               :   **Chapter 11 Case No.**
**Fundamental Provisions, L.L.C.,** *et al* [1]                :   **09-11897**
                                                               :
              Debtor.                                          :   Jointly Administered
---------------------------------------------------------------x

**EMERGENCY MOTION FOR ENTRY OF ORDER PURSUANT TO
SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 4001 FOR INTERIM AND FINAL ORDERS: (1) AUTHORIZING USE
OF CASH COLLATERAL; (2) GRANTING ADEQUATE PROTECTION; (3)
SCHEDULING AND APPROVING THE FORM AND METHOD OF
NOTICE FOR A FINAL ORDER; AND (4) FOR RELATED RELIEF**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned Debtors and Debtors in possession (collectively referred to herein as the "Debtor" or "Fundamental"), by and through its undersigned attorney, hereby moves (this "Motion") this Court for entry of an order pursuant to sections 361 and 363 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, as amended, the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in substantially the form attached hereto as Exhibit A: (1) authorizing the Debtor to use cash collateral; (2) granting adequate protection; (3) scheduling and approving the form and method of notice of the final hearing on the Motion; and (4) for other related relief as necessary. In further support of this Motion, the Debtor respectfully states as follows:

---

[1] Pollo, Inc. (09-11900) and Thaxco, Inc. (09-11901) have requested that they be jointly administered with Fundamental Provisions, L.L.C.

03259/17643/173719.3                              1

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory bases for the relief requested herein are sections 361 and 363 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules.

## BACKGROUND

3. On this date (the "Petition Date"), the Debtor filed for relief under chapter 11 of the Bankruptcy Code. The Debtor intends to continue to operate its business and manage its property as debtor in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established.

4. This Court is referred to paragraphs ¶¶ 4 - 15 of the *Motion for an Order Under Fed.R.Bankr.P. 1015 Directing Joint Administration of Chapter 11 Cases* [P-2] ("Joint Administration Motion") for a detailed discussion of the factual background and circumstances surrounding the Debtor's commencement of this chapter 11 case. Capitalized terms not defined herein are as defined in the Joint Administration Motion.

## RELIEF REQUESTED

5. Certain creditors, including the Internal Revenue Service, (collectively, the "Secured Creditors"), may claim a lien on the Debtor's credit card deposits, which constitute cash collateral. As of the date of filing, the Debtor estimates that it has approximately $25,000 in credit card slips that have been deposited for collection, which creditors may assert constitute cash collateral. In the ordinary case, these credit card deposits are collected and replaced on a daily basis with other credit card deposits arising from the sale of food and beverages.

6. By this Motion, the Debtor respectfully requests: (a) authorization and approval, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(c)(2), to (i) use cash which may constitute Cash Collateral (as defined below) on an interim basis in accordance with the proposed interim order submitted herewith (the "Proposed Interim Order") and in accordance with the budget attached hereto as Exhibit B (as may be amended, supplemented, modified or extended from time to time upon approval by the Court, the "Budget") (however, with respect to the Budget, on a weekly basis the Debtor seeks authority to exceed each line item in the Budget by up to twenty percent (20%), so long as the aggregate amount of the Budget on a monthly basis is not exceeded by more than twenty percent (20%)), (ii) grant adequate protection liens (iii) pending a final hearing on this Motion (the "Final Hearing"), obtain use of cash which may constitute Cash Collateral (as defined below) on a limited and interim basis to and including the date on which the Final Order is entered; and (b) in accordance with Bankruptcy Rule 4001(b)(2), that this Court schedule the Final Hearing and approve notice with respect thereto, all as more fully described in the Proposed Interim Order.

7. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may use cash collateral with court approval and after notice and a hearing. The Debtor seeks authority to use credit card deposits and proceeds of such deposits (collectively, to the extent such credit card deposits constitute Cash Collateral, the "Cash Collateral")[2], in which the Secured Creditors may assert a valid and perfected security interest. Pursuant to 11 U.S.C. §363(e), the Court may condition the use of such cash collateral "as is necessary to provide adequate protection of" the interests of the Secured Creditors in the Cash Collateral. Pursuant to 11 U.S.C. §361, when a secured party's interest in cash collateral is entitled to adequate

---

[2] The Debtor reserve their rights with respect to whether their post-petition revenues constitute cash collateral under 11 U.S.C. § 363(a).

protection, such adequate protection may be provided by, among other things, an additional or replacement lien on assets generated post-petition "to the extent that such … use … results in a decrease in value of such entity's interest in the cash collateral."  Given that the Secured Creditors may assert liens on substantially all of the Debtor's assets, the Debtor proposes to grant each of them a replacement lien on post-Petition Date assets, having the same respective priority as their prepetition liens, including post-petition credit card deposits, to secure any post-petition diminution in value of cash which may constitute Cash Collateral thereof to the extent such interests are entitled to adequate protection against such diminution under the Bankruptcy Code.

## **DISCUSSION**

8. <u>The Need for Use of Cash Collateral</u>.  The Debtor has an immediate need to use Cash Collateral for the purpose of meeting necessary expenses incurred in the ordinary course of its business, including payroll, purchase of food and beverage supplies for sale, purchase of paper products, utility expenses, maintenance costs, and the costs associated with its restructuring and this proceeding, while it restructures and reorganizes its indebtedness and business in a manner that maximizes value and is fair and equitable to all parties in interest.  As noted, as of the Petition Date, the Debtor possessed credit card deposits in the approximate amount of $25,000.  The Debtor estimates at this time based on the Budget that the Debtor's unencumbered cash on hand, the Cash Collateral and future revenue from continued operations will be sufficient to fund the Debtor's continued operations during the period set forth in the Budget.

9. The Budget provides for the payment of essential ordinary course operating expenses during the Budget period.  Ceasing operations is not in the best interests of any party to this chapter 11 case, including the Secured Creditors, as the Debtor's failure to operate will

immediately and irreparably impair (a) the Debtor's extrinsic value and (b) the Debtor's ability to use Cash Collateral to generate cash proceeds in excess of the amount of the Cash Collateral.

10. Additionally, the Budget provides for payment of restructuring costs, including periodic payments to professionals engaged in this chapter 11 case. As long as the Secured Creditors are adequately protected, the Debtor's use of the Cash Collateral to pay its professionals is allowed. See In re Proalert, LLC, 314 B.R. 436 (9th Cir. B.A.P. 2004) ("plain language of §363 allows a debtor to use cash collateral [to pay its professionals] if the secured creditor's interest is adequately protected"); In re Coventry Commons Assoc., 149 B.R. 109 (Bankr. E.D. Mich. 1992) (a debtor may use cash collateral to pay professional fees if the secured creditor is adequately protected, without regard to requirements of section 506 of the Bankruptcy Code); In re Tri-County Water Ass'n., Inc., 91 B.R. 547, 550 (Bankr. D.S.D. 1988) (generally, only unencumbered assets may be used to pay administrative claimants, but such claims may be paid from collateral if they resulted in a direct benefit to the secured creditor, if the secured creditor consents or if the secured creditor is adequately protected). As discussed above, the Secured Creditors are adequately protected for the use of Cash Collateral; thus, payment of the Debtor's professionals' fees and expenses using the Cash Collateral is proper.

11. Proposed Adequate Protection. Whether or not a creditor is adequately protected is determined on a case-by-case basis. See In re O'Connor, 808 F.2d 1393, 1396 (10th Cir. 1987) (stating that the concept of adequate protection is a flexible one and that courts should determine whether it exists on a case-by-case basis); In re Self, 239 B.R. 877, 881 (Bankr. N.D. Tex. 1999) (determination of adequate protection is not an "exact science"; rather, it requires a court to balance all relevant factors); In re JKJ Chevrolet, Inc., 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (stating that adequate protection is determined on a case-by-case basis).

12. Adequate protection exists by virtue of augmentation (or preservation) of the value of a secured creditor's collateral. See In re Ralar Distribs., Inc., 166 B.R. 3, 6(Bankr. D. Mass. 1994) ("[a]ctivities of a debtor can enhance collateral value and thereby provide adequate protection"); In re T.H.B. Corp., 85 B.R. 192, 195 (Bankr. D. Mass. 1988) ("[T]he stream of cash collateral will likely remain at an approximate even level over a sustained period, with new proceeds replacing old. The constant nature of this stream gives the [secured lender] protection for its cash collateral."); In re Pursuit Athletic Footwear, Inc., 193 B.R. 713, 716-717 (Bankr. D. Del. 1996) (court found secured creditor was adequately protected given lack of evidence that collateral was diminishing, debtor had operated profitably and was projected to continue operating profitably); In re Pine Lake Vill. Apartment Co., 19 B.R. 819 (Bankr. S.D.N.Y. 1982) (where property which secured mortgagee's claim was experiencing no depreciation and was arguably being enhanced in value and where the value of the property securing the claim was increasing to the extent of unspent rental income being accumulated in segregated cash collateral accounts, mortgagee had adequate protection).

13. As adequate protection to secure any diminution of the Secured Creditors' valid and enforceable liens, if any, on Cash Collateral as a result of the Debtor's use of Cash Collateral hereunder (collectively, the "Post-Petition Obligations"), the Secured Creditors will be granted, effective immediately and without the necessity of the execution by the Debtor of financing statements, mortgages, security agreements, or otherwise, in accordance with section 361(2) of the Bankruptcy Code, replacement security interests in and liens on (the "Adequate Protection Liens") all post-petition assets of the Debtor and its estates on which the Secured Creditors held valid and perfected liens as of the Petition Date and all proceeds, rents and products of all of the foregoing and all distributions thereon (collectively, the "Post-Petition Collateral"), in the same

respective priority they held prior to the Petition Date, and subject only to valid, perfected, enforceable and nonavoidable liens and security interests granted by law or by the Debtor to any person or entity that were superior in priority to the prepetition security interests and liens held by the Secured Creditors, and only to the extent such prepetition senior liens are not otherwise subject to avoidance or subordination, which Adequate Protection Liens are granted to secure the amount of any post-petition diminution in the value of the Secured Creditors' interests in the Cash Collateral to the extent such interests are entitled to adequate protection against such diminution under the Bankruptcy Code. Notwithstanding the foregoing or anything herein to the contrary, the Post-Petition Collateral shall not include any claims, causes of action and proceeds thereof arising under sections 510, 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code (collectively, "Avoidance Actions").

14. The Debtor asserts that all Cash Collateral now existing and hereafter acquired will be deposited and maintained by the Debtor in certain bank accounts (the "Accounts"), pending disbursement in the ordinary course of business of the Debtor consistent with the provisions of this Proposed Interim Order and the Budget.

15. The Budget includes (a) the Debtor's aggregate projected sources and uses of cash over the Budget period and (b) summaries of the Debtor's operating properties' impact on and contributions to the Debtor's cash Budget. The Budget attached to the Motion demonstrates that the value of the Debtor's Cash Collateral will increase over the term of the Budget. This increase provides adequate protection to the interests of the Secured Creditors.

16. <u>Interim Approval of the Use of Cash Collateral Should Be Granted</u>. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 may not be commenced earlier than fourteen (14) days after the service of such motion.

Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

17. Pursuant to Bankruptcy Rule 4001(b), the Debtor request that the Court conduct a preliminary expedited hearing as soon as practicable (the "<u>Preliminary Hearing</u>") to enter the Proposed Interim Order authorizing the Debtor to use Cash Collateral in an aggregate amount not to exceed the amounts set forth in the Budget (other than as described herein) attached to the Proposed Interim Order pending the Final Hearing.

18. The ability of the Debtor to finance, through the use of Cash Collateral, its ongoing operations as it restructures its indebtedness and business for the benefit of all creditor constituencies is in the best interests of the Debtor, all of its creditors and its estate. The relief requested herein is necessary in order to avoid immediate and irreparable harm and prejudice to the Debtor's estate and to all parties in interest in the Debtor's chapter 11 case. The Debtor has an immediate need to use Cash Collateral to continue its business operations while it pursues a restructuring or alternate exit to this chapter 11 case. The Debtor's business will be immediately and irreparably harmed without authorization from the Court to use Cash Collateral, as requested, on an interim basis pending the Final Hearing.

19. The interests of the Secured Creditors in the Cash Collateral will be adequately protected pursuant to the Proposed Interim Order. As indicated by the Budget, the Debtor's operations will be cash flow positive during the period covered therein after payment of essential expenses and expenses related to the administration of this chapter 11 case. Additionally, also as indicated by the Budget, the value of the Debtor's hard assets will not decline during the Budget period, because the Budget allocates funds sufficient for standard and routine maintenance.

20. The terms of the Proposed Interim Order are incorporated herein and made a part hereof by this reference. Pending the Final Hearing, this Motion should be granted on an interim basis, on the terms set forth in the Proposed Interim Order, in order to maximize the value of the estates and to prevent irreparable harm to the Debtor prior to the Final Hearing.

## REQUEST FOR FINAL HEARING

21. Finally, pursuant to Bankruptcy Rule 4001(b)(2), the Debtor respectfully requests that this Court set a date for the Final Hearing that is no less than fourteen (14) days from the Petition Date and approve the provisions for notice of such Final Hearing that are set forth in the Proposed Interim Order.

22. The Debtor requests that it be authorized to serve a copy of the signed Interim Order, which fixes the time and date for filing objections, if any, by first-class United States Mail upon all secured creditors of record, the Office of the United States Trustee, the Debtor' twenty (20) largest creditors and any party having filed a request to receive service in the Debtor's chapter 11 case. The Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Rule 4001 of the Bankruptcy Rules.

## NOTICE

23. Notice of this Motion has been given to (i) the United States Trustee; (ii) the Secured Lenders through their respective counsel; (iii) the 20 largest unsecured creditors; (iv) all parties who request notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; (v) the Internal Revenue Service; (vi) all parties entitled to notice under Rule 2002(j) of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

**WHEREFORE**, the Debtor respectfully requests that this Court (a) conduct an

03259/17643/173719.3                              9

emergency hearing on this Motion; (b) enter the Proposed Interim Order substantially in the form submitted herewith; (c) schedule a Final Hearing on the relief requested herein; and (d) grant such further relief as may be equitable and just.

This 8th day of December, 2009.

> Respectfully submitted,
>
> */s/ Barry W. Miller*
> William H. Patrick III, La. Bar No. 10359
> Barry W. Miller, La. Bar No. 09678
> Cherie D. Nobles, La. Bar No. 30476
> **HELLER, DRAPER, HAYDEN,**
> **PATRICK & HORN, L.L.C.**
> 650 Poydras Street, Suite 2500
> New Orleans, LA  70130-6103
> Telephone: 504-299-3300
> Fax: 504-299-3399
> wpatrick@hellerdraper.com
> bmiller@hellerdraper.com
> cnobles@hellerdraper.com
> **Proposed Counsel for Debtors**

# NOTICE ANNEX

Pursuant to 11 U.S.C. § 342, the following sets forth the name, addresses and last four digits of the tax identification number for each of the referenced Debtors:

| DEBTORS AND ADDRESSES | CASE NO. | TAX I.D. NO. |
|---|---|---|
| Fundamental Provisions, L.L.C.<br>1434 N. Burnside Avenue, Suite 22<br>Gonzales, LA 70737 | 09-11897 | xx-xxx1846 |
| Pollo, Inc.<br>1434 N. Burnside Avenue, Suite 22<br>Gonzales, LA 70737 | 09-11900 | xx-xxx1924 |
| Thaxco, Inc.<br>1434 N. Burnside Avenue, Suite 22<br>Gonzales, LA 70737 | 09-11901 | xx-xxx2455 |