# UNITED STATES BANKRUPTCY COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| In re | **09-11897** |
| | **Chapter 11** |
| **Fundamental Provisions, L.L.C.** | **Jointly Administered** |
| **Debtor.** | |
| | |
| In re | **09-11900** |
| | **Chapter 11** |
| **Pollo, Inc.** | **Jointly Administered** |
| **Debtor.** | |
| | |
| In re | **09-11901** |
| | **Chapter 11** |
| **Thaxco, Inc.** | **Jointly Administered** |
| **Debtor.** | |

## AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## FOR FUNDAMENTAL PROVISIONS, LLC. AND FILED AFFILIATES
## <u>AS OF JULY 22, 2010</u>

HELLER, DRAPER, HAYDEN, PATRICK
 & HORN, L.L.C.
William H. Patrick, III (La. Bar No. 10359)
Barry W. Miller (La. Bar No. 09678)
Cherie Dessauer Nobles (La. Bar No. 30476)
650 Poydras Street, 25th Floor
New Orleans, LA 70130-6103
Telephone: (504) 299-3300
Facsimile: (504) 299-3399

Counsel for Debtors and Debtors in Possession

**Date: July 22, 2010**

Fundamental Provisions, LLC, Thaxco, Inc., and Pollo, Inc., as debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors"), propose the following Joint Chapter 11 Plan of Reorganization with respect to each of their Chapter 11 Cases.

# ARTICLE 1

## <u>DEFINITIONS AND CONSTRUCTION OF TERMS</u>

Unless the context requires otherwise, each term stated in either the singular or the plural will include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, the feminine and the neuter. Unless the context requires otherwise, the following words and phrases will have the meanings set forth below when used in the initially-capitalized form in this Plan: An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require. The words "in this Plan", "this Plan", "hereto", "hereof," "herein," or "hereunder" and other words of similar import, unless specifically stated otherwise, refer to the entirety of the Plan, and not to a particular Section of the Plan. The words "Article," "Section," "subsection," "clause" or "sentence" refer to particular provisions of the Plan and not to the entirety thereof. The word "including" (and with correlative meaning, the word "include") means including, without limiting or restricting the generality of any description preceding the word "including" or "include," and shall mean "including, but not limited to." The use of the word "any" shall mean "any and all," and the use of the word "all" shall also mean "any and all." The words "shall" and "will" are used interchangeably and have the same meaning. Unless the context requires

otherwise, the following words and phrases shall have the meanings set forth below when used in initially capitalized form in this Plan:

1.1 *"Administrative Expense Claim"* shall mean a Claim for any cost or expense of administration of any Debtor's Chapter 11 Case entitled to priority in accordance with the provisions of Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) actual and necessary expenses of preserving the Estates and operating the Debtors' businesses, (b) fees and expenses of Professionals to the extent allowed by a Final Order under Sections 328, 330 and 503 of the Bankruptcy Code, and (c) fees and charges properly assessed against the Debtors in Possession under Section 1930 of title 28 of the United States Code. It shall not include the cure costs with respect to executory contracts and unexpired leases assumed by the Debtors pursuant to Section 365 of the Bankruptcy Code.

1.2 *"Allowed"* shall mean with respect to any Claim against or Interest in any Debtor, a Claim or Interest (a) proof of which is timely Filed (or by order of the Bankruptcy Court or as otherwise provided herein is not required to be Filed), (b) that is listed by such Debtor in its Schedules as liquidated in amount, non-disputed and non-contingent and for which no proof of claim has been Filed, or (c) expressly allowed pursuant to this Plan; and, in each case with respect to (a) and (b) above, either (i) no objection (or an amendment of the Schedules with respect thereto) to its allowance, amount, or classification has been interposed within the applicable period for filing same fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such objection (or an amendment of the Schedules with respect thereto), if so interposed, has been determined and fixed by a Final Order (but only to the extent so

determined and fixed and not where fixed and allowed solely for purposes of voting to accept or reject the Plan). Claims that are not Allowed or are disallowed by Final Order or otherwise, including those disallowed under Section 502(d) of the Bankruptcy Code, shall not be Allowed Claims.

1.3 *"Allowed Amount"* shall mean, with respect to each Claim:

(a) the dollar amount of an Allowed Claim as determined by a Final Order or as set forth in this Plan;

(b) in the event that no such determination of the Allowed Amount of a Claim is made pursuant to subsection (a), the dollar amount agreed to by the Claimant and the applicable Debtor or, after the Effective Date, the applicable Reorganized Debtor;

(c) in the event that no Allowed Amount is determined pursuant to clause (a) or agreed to pursuant to clause (b) above, the amount estimated by a Final Order of the Bankruptcy Court for purposes of distribution pursuant to Section 502 of the Bankruptcy Code; or

(d) in the event that an Allowed Amount is not determined, agreed to or estimated pursuant to clauses (a), (b) or (c) above, the dollar amount as to which no objection to the allowance, amount or classification thereof has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court.

Unless otherwise specified herein or in a Final Order, the Allowed Amount of any Claim shall not include interest accruing on such Claim from and after the Petition Date.

1.4 *"Allowed Claim"* shall mean a Claim to the extent that it has been Allowed. It shall include the total principal amount of the claim, plus, if applicable, allowed interest, allowed attorney's fees, and any other allowed charges, fees or penalties to the extent allowable under 11 U.S.C. § 506.

1.5 *"Assets"* shall mean all property of the Debtors as defined in Section 541(a) of the Bankruptcy Code, including but not limited to, all of the Debtors' rights, title and interests in and to all immovable and real property and appurtenances thereto,

improvements thereon, cash, deposits, telephone numbers, trade names, trade secrets, trademarks, copyrights, business "know how," goodwill, bank accounts of any and all types of any kind, tangible personal property, furniture, fixtures, equipment, machinery, inventory, general intangibles, general accounts, accounts receivable, intellectual property of all types and kinds, contract rights, licenses and permits, contracts and agreements, privileges of any and all kinds, and any and all other property and rights of the Debtors and their estates, including any and all Avoidance Claims and Causes of Action and any and all defenses, which could be exercised by or on behalf of a Chapter 11 trustee or a debtor in possession.

1.6    *"Avoidance Claim"* shall mean all rights, claims, causes of action, avoiding powers, suits and proceedings of or brought by or which may be asserted by a debtor in possession or a person under chapter 5 of the Bankruptcy Code, including by way of illustration and not limitation, under Sections 510, 541, 544, 547, 548, 549, 550, 553 and 554 of the Bankruptcy Code, together with any claims, rights, remedies or demands that may be asserted by a creditor or representative of creditors under similar applicable state or other laws, and claims in the nature of substantive consolidation, successor liability, veil piercing, or alter-ego.

1.7    *"Bankruptcy Code"* shall mean title 11 of the United States Code, as amended from time to time.

1.8    *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Middle District of Louisiana; having jurisdiction over the Chapter 11 Cases, or if such court ceases to exercise jurisdiction over the Chapter 11 Cases, such other court having jurisdiction under Title 28 of the United States Code over the Chapter 11 Cases.

1.9    *"Bankruptcy Rules"* shall mean the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules of the Bankruptcy Court, in each case as amended from time to time during the Chapter 11 Cases.

1.10    *"Business Day"* shall mean any day that is not a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.11    *"Capitalize" or "Capitalized Claim"* shall mean the amount of a Secured Claim to include outstanding principal, accrued interest through the Effective Date, and reasonable attorneys' fees and expenses allowable pursuant to 11 U.S.C. §506. This amount will be paid in full in accordance with the terms of the Plan.

1.12    *"Cash"* shall mean legal tender of the United States of America, cash equivalents, and readily marketable securities or instruments, including but not limited to, bank deposits, accounts, certified or cashiers checks, timed certificates of deposit issued by any bank, commercial paper, and readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof.

1.13    *"Causes of Action"* shall mean, without limitation, any and all of the Debtors' and the Estates' actions, causes of action, rights, suits, claims, accounts, debts, sums of money, damages, judgments, claims and demands, redemption and repurchase of property, actions, defenses, offsets, powers (including all police, regulatory, and enforcement powers and actions that may be taken), privileges, licenses, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whatsoever, whether known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or tort, in law, equity or otherwise, whether or not reduced to judgment, liquidated, unliquidated, fixed,

contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable, accruing to and in favor of the Debtors or Debtors in Possession pursuant to the Bankruptcy Code or any applicable statute or law or legal theory. For avoidance of doubt, Causes of Action include, but are in no way limited to (a) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (b) claims pursuant to Section 362 of the Bankruptcy Code, (c) such claims and defenses as fraud, mistake, duress, and usury, (d) all Avoidance Claims, and (e) all Causes of Action that are assertable by or may be directly or derivatively asserted by the Debtors, their Estates, the Reorganized Debtors, or a representative of the Estate on behalf of Creditors of the Debtors or the Estate.

1.14    *"Chapter 11 Cases"* shall mean the chapter 11 cases of the Debtors pending before the Bankruptcy Court.

1.15    *"Chief Restructuring Officer"* shall mean such person appointed by the Bankruptcy Court to monitor and control all operations of the Debtors including disbursements, employment of key personnel and professionals, and the incurrence of debt, and is authorized to represent the Debtors in these Bankruptcy Cases and related matters.

1.16    *"Claim"* shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.17    *"Claimant"* or *"Creditor"* shall mean the holder of a Claim, together with any predecessor or successor in interest with respect to such Claim.

1.18    *"Class"* shall mean any group of Claims or Interests classified together by this Plan pursuant to Section 1122 of the Bankruptcy Code.

1.19    *"Collateral"* shall mean property of the bankruptcy Estates which secures a Claim of a Creditor of the Estates.

1.20    *"Confirmation Date"* shall mean the date of entry on the docket of the Bankruptcy Court of the Confirmation Order.

1.21    *"Confirmation Hearing"* shall mean the hearing before the Bankruptcy Court regarding confirmation of this Plan and related matters under Section 1128 of the Bankruptcy Code.

1.22    *"Confirmation Order"* shall mean the order signed by the Bankruptcy Court confirming this Plan.

1.23    *"Convenience Claim"* shall mean: (i) a General Unsecured Claim in an amount less than or equal to $1,000.00; or (ii) a General Unsecured Claim in an amount greater than $1,000 whereby the holder of such Claim agrees to reduce such Claim to $1,000 and accept the treatment provided in this Plan to Convenience Claims; *provided further, however,* that any General Unsecured Claim that is a component of a larger Claim shall not be considered or treated as a Convenience Claim in Class 22.

1.24    *"Cramdown"* shall mean the confirmation of this Plan pursuant to 11 U.S.C. § 1129(b) notwithstanding any rejection by an Impaired Class or Classes of holders of Claims or Interests of this Plan.

1.25    *"Debtors"* or *"Debtor"* shall mean Fundamental Provisions, LLC, Thaxco, Inc., and Pollo, Inc., collectively.

1.26    *"Debtor in Possession or Debtors in Possession"* shall mean the Debtors between the Petition Date and the Effective Date.

1.27    *"Disclosure Statement"* means the Disclosure Statement Filed in connection with the Plan, as modified or amended, approved by the Bankruptcy Court on on April 23, 2010 [P-386].

1.28    *"Disputed Claim"* shall mean any Claim that is not an Allowed Claim.  In the event that any portion of a Claim is not an Allowed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan until entry of a Final Order fixing and determining the Allowed Amount thereof. Without limiting any of the foregoing, a Claim that is the subject of or part of a pending objection, motion, complaint, counterclaim, setoff, recoupment, Avoidance Claim, litigation claim or defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed a Disputed Claim, unless the Plan or the Confirmation Order expressly provides otherwise.

1.29    *"Disputed Claims Reserve"* shall mean the reserve established pursuant to Section 7.8 of the Plan with respect to Disputed Claims.

1.30    *"Distribution Date"* shall mean each date any payment of Cash or distribution of Assets is due to the holders of Allowed Claims or Allowed Interests under this Plan.

1.31    *"Effective Date"* shall mean the date which is specified as the "Effective Date" in the Notice of Occurrence of Effective Date filed in the record of the Bankruptcy Case pursuant to Article 11.2 of the Plan.

1.32    *"Entity"* shall mean an individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated

organization, government, governmental unit (as defined in the Bankruptcy Code) or any political subdivision thereof, or other person.

1.33    *"Equipment Lenders' Secured Claims"* shall mean the Secured Claims of any Creditor whose Collateral consists only of personal (movable) property.

1.34    *"Equipment and Property Lenders' Secured Claims"* shall mean the Secured Claims of any Creditor whose Collateral consists of both real (immovable) property and personal (movable) property.

1.35    *"Estate"* shall mean the estate of each Debtor, as defined in Section 541 of the Bankruptcy Code.

1.36    *"File"* or *"Filed"* means properly filed with the clerk of court of the Bankruptcy Court in the Chapter 11 Cases, as reflected on the official docket of the clerk of court of the Bankruptcy Court for the Chapter 11 Cases.

1.37    *"Franchisor"* means AFC Enterprises, Inc.

1.38    *"Final Order"* means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (a) which has become final for purposes of 28 U.S.C. § 158 or such analogous law or rule in the case of an order of a state court and (b)(i) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors (or, if after the Effective Date, by the Reorganized Debtors) or, (ii) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, (x) such order or judgment of the Bankruptcy Court

or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed with no modifications thereof, or (y) certiorari, reargument or rehearing has been denied, and (z) the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired with no such further appeal, petition for certiorari or motion for reargument or rehearing having been sought or pending; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 or other analogous rules of state courts governing procedures in cases before other courts may be filed with respect to such order or judgment shall not render such order or judgment not to be a Final Order.

1.39    *"Fixed Charge Coverage Ratio" or "FCCR"* shall mean earnings before interest, taxes, depreciation and amortization of debt, minus required capital expenditures and taxes divided by the payments required under the plan of reorganization.

1.40    *"General Unsecured Claim"* means any Claim that is not an Administrative Claim, Priority Claim, Secured Claim, or a Claim otherwise specifically classified in another class in this Plan.

1.41    *"Impaired"* shall mean, with respect to any Class, that such Class is "impaired" under the Plan within the meaning of Section 1124 of the Bankruptcy Code.

1.42    *"Interests"* shall mean, collectively, any and all "equity securities" (as defined in Section 101(16) of the Bankruptcy Code) in a Debtor.

1.43    *"Lien"* shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.44    *"Petition Date"* shall mean December 8, 2009.

1.45    *"Plan"* shall mean this Joint Chapter 11 Plan of Reorganization in its present form or as it may, from time to time, be modified, amended or supplemented in accordance with the terms hereof, together with any exhibits thereto.

1.46    *"Prime Rate"* shall mean the prime rate, as reported by the Wall Street Journal on the Effective Date.

1.47    *"Priority Tax Claim"* shall mean any Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.48    *"Professional"* shall mean any professional (a) retained by the Debtors in the Chapter 11 Cases or (b) to be compensated pursuant to Sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code.   It shall not include the attorneys or other professionals employed by any Creditor.

1.49    *"Property Lenders' Secured Claims"* shall mean the Secured Claims of any Claimant who has Collateral consisting primarily of real (immovable) property.

1.50    *"Property Tax Claims"* shall mean any obligations that the Debtors have to any government unit or any other person or entity for a tax measured or determined based upon the value of property of the Estate and shall include any Claims in or concerning any property which may have been sold, transferred or forfeited as a result of the failure of the Debtors to pay any property tax liability, including ad valorem property taxes, and which may have been sold by any federal, state or local taxing authority at public or private sale and for which the Debtors have a right to redeem, recover or purchase such property from either the taxing authority or any governmental unit or any trust, individual or entity that may have obtained or purchased such property or in any manner obtained any right or interest in such property.

1.51     *"Reorganized Debtors"* shall mean the Debtors after the Effective Date.

1.52     *"Schedules"* shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors as required by Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented through the Confirmation Date.

1.53     *"Secured Claim"* shall mean any Allowed Claim of any Claimant secured by a Lien on the Debtors' interest in any Assets as set forth in the Plan or as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code.

1.54     *"Unimpaired"* shall mean, with respect to any Class, that such Class is not Impaired.

# ARTICLE 2

# PROVISIONS FOR PAYMENT OF
# ADMINISTRATIVE EXPENSES

**2.1     *Payment of Allowed Administrative Expense Claims*.**

2.1.1    *Allowed Administrative Expense Claims.*

Subject to Section 2.1.2 below, each Allowed Administrative Expense Claim shall be paid in full, in Cash, by the Reorganized Debtors on the Effective Date or upon such other terms as may be agreed upon by the holder of such Allowed Administrative Expense Claim and the Reorganized Debtors or otherwise established pursuant to an order of the Bankruptcy Court; *provided, however,* that Administrative Expense Claims representing liabilities incurred in the ordinary course of business by any Debtor in Possession shall be paid by the applicable Reorganized Debtor in accordance with the terms and conditions of the particular transactions, the applicable non-

bankruptcy law, and any agreements relating thereto or any order of the Bankruptcy Court.

2.1.2 *Compensation of Professionals.*

All Professionals, who are seeking compensation or who have been compensated from the estates of the Debtors in Possession during the Chapter 11 Cases, or who are seeking compensation from the estates of the Debtors in Possession or from the Reorganized Debtors for services rendered or reimbursement of expenses incurred from the Petition Date through and including the Effective Date, pursuant to Sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code, shall (a) File final applications for allowance of compensation for services and reimbursement of expenses incurred from the Petition Date through the Effective Date by no later than the date that is forty-five (45) days after the Effective Date, and (b) if granted such an award by the Bankruptcy Court, be paid in full by the Reorganized Debtors or as otherwise provided in this Plan in such amounts as are Allowed by Final Order of the Bankruptcy Court (i) on the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, or (ii) when mutually agreed upon by such holder of an Administrative Expense Claim and the Reorganized Debtors.

2.1.3 *Bar Date for Filing Administrative Expense Claims.*

Except with respect to any Administrative Expense Claims for which a different deadline is established by this Article 2, any Administrative Expense Claims must be Filed no later than thirty (30) days after the Effective Date or any such Administrative Expense Claim is and shall be deemed to be forever barred and unenforceable against the Debtors, Reorganized Debtors, their respective estates, and

their Assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof.

# ARTICLE 3

# CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

**3.1**    *Class 1.  Priority Tax Claims.*

3.1.1    *Classification*.

Class 1 consists of all Allowed Priority Tax Claims under Section 507(a)(8), excluding Property Tax Claims.

3.1.2    *Treatment*.

Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, including applicable interest which at the option of the Reorganized Debtors shall be paid (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtors; or (c) in Cash in equal quarterly installments, with the first installment being due no later than December 1, 2010, with an amortization rate calculated on a twenty (20) year repayment period, with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code, with the outstanding principal balance, together with all accrued and unpaid interest, being due and payable on December 8, 2014.

In addition to the sums set forth above, the creditors in this class shall be distributed on a pro rata basis fifty percent (50%) of the amount of funds received by the Debtors as determined on an annual basis commencing on the first anniversary of the first

payments made to these creditors to the extent the FCCR exceeds 1.20. The FCCR will be determined on December 1, 2011, and every year thereafter for the next consecutive four (4) years ending on December 1, 2014, when the entire balance of these creditors' claims become due and payable.

Notwithstanding the foregoing, nothing in this Plan or the treatment provided in this section is intended to discharge or alter the validity, priority, and enforceability of any Liens or security interests afforded to or permitted for Allowed Priority Tax Claims under applicable law. Further, penalties assessed against the Debtors by the Internal Revenue Service shall be secured by the Internal Revenue Service's Lien.

A failure by the Reorganized Debtors to make a payment to the Louisiana Department of Revenue ("Department") or to the Internal Revenue Service ("IRS") pursuant to the terms of the Plan shall be an Event of Default. The Department or the IRS shall give the Debtors written notice thereof, with a copy to Debtors' counsel, and the Debtors may cure such default within twenty (20) days from the receipt of such notice. If the Debtors fail to cure an Event of Default within twenty (20) days after receipt of written notice of default, then the Department or the IRS may (a) enforce the entire amount of its Claim; (b) exercise any and all rights and remedies allowed under applicable state law, federal law, and other applicable law; and/or (c) seek such relief as may be appropriate in the Court.

### 3.1.3   *Impairment and Voting.*

Class 1 is Impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

**3.2** *Property Tax Claims*

3.2.1 *Classification*

Class 2 consists of all Allowed Property Tax Claims.

3.2.2 *Treatment*

Each holder of an Allowed Property Tax Claims shall be paid the Allowed Amount of its Allowed Property Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Claim and the Reorganized Debtors; or (c) in full, in Cash, in four (4) equal quarterly installments, with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code.

Provided further, that the Debtors shall be authorized to pay any Claims of any Claimants in this Class in full in order to preserve and protect their rights and interests in such property and in order to redeem, repurchase or reclaim such property in accordance with applicable law prior to the expiration date of any such redemption, reclamation or repurchase period.

Notwithstanding the foregoing, nothing in this Plan or the treatment provided in this section is intended to discharge or alter the validity, priority, and enforceability of any Liens or security interests afforded to or permitted for Allowed Property Tax Claims under applicable law.

3.2.3 *Impairment and Voting*

Class 2 is Impaired by the Plan. The holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

### 3.3     *Class 3 Secured Claim of Beach Community Bank*

3.3.1     *Classification.*

Class 3 consists of the Secured Claim of Beach Community Bank.

3.3.2     *Treatment.*

If the Debtors are unable to obtain a bona fide offer to purchase the real property more specifically described in that certain Future Advance Mortgage, Assignment of Rents and Leases and Security Agreement dated June 22, 2007 and recorded in Official Record Book 2792, Page 1568 of the public records of Okaloosa County, Florida ("BCB Mortgaged Property") and the furniture, fixtures, equipment and inventory ("Personal Property") that secures Beach Community Bank's ("BCB") Claim that is acceptable to the Debtors and BCB as the holder of the Class 3 Secured Claim by September 10, 2010, then at the sole discretion of the creditor, the BCB Mortgaged Property and Personal Property shall either be transferred to BCB or its designee or BCB shall be permitted to proceed with foreclosure proceedings without further order of the Bankruptcy Court. The Debtors shall execute any and all documents reasonably requested by BCB in order to transfer the BCB Mortgaged Property and Personal Property to BCB or to expedite any foreclosure proceedings. Furthermore, the automatic stay shall be terminated (i) on September 10, 2010 if the Debtors have not received a bona fide offer to purchase the BCB Mortgaged Property and Personal Property, or (ii) on December 10, 2010 if a closing of the sale of BCB Mortgaged Property and Personal Property has not taken place, unless BCB consents to an extension in writing. Upon termination of the automatic stay, BCB may institute and pursue foreclosure proceedings against the BCB Mortgaged Property and Personal Property securing its Claim if BCB wishes to do so.

Notwithstanding anything contained herein to the contrary, any closing that is a result of a bona fide offer to purchase the BCB Mortgaged Property and Personal Property shall take place no later than December 10, 2010, unless BCB consents to an extension in writing.

Debtors and BCB shall attempt to reach an agreement with respect to the value of the BCB Mortgaged Property and Personal Property securing BCB's Claim; however, if a sale has not occurred in 90 days, which sale amount shall be the value of the BCB Mortgaged Property and Personal Property, or if they are unable to reach an agreement within 90 days of the Confirmation Hearing, the Bankruptcy Court shall determine the value of the BCB Mortgaged Property and Personal Property in accordance with 11 USC § 506 (a)(1). The value of BCB's Mortgaged Property and Personal Property shall be deducted from BCB's Claim in determining the balance of BCB's Claim. The balance of the Claim, if any, shall be treated in accordance with Section 4.1 of the Plan.

### 3.3.3 *Impairment and Voting.*

Class 3 is Impaired by the Plan. The holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

**3.4    *Class 4 Secured Claim of Britton & Koontz Bank***

### 3.4.1 *Classification.*

Class 4 consists of the Secured Claim of Britton & Koontz Bank.

### 3.4.2 *Treatment.*

Each holder of a Class 4 Claim shall be treated in accordance with Section 4.2 of this Plan.

### 3.4.3 *Impairment and Voting*.

Class 4 is Impaired by the Plan.  The holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

**3.5     Class 5  Secured Claim of Dow Federal Credit Union**

### 3.5.1 *Classification*.

Class 5 consists of the Secured Claim of Dow Federal Credit Union.

### 3.5.2 *Treatment*.

Each holder of a Class 5 Claim shall be treated in accordance with Section 4.3 of this Plan.

### 3.5.3 *Impairment and Voting*.

Class 5 is Impaired by the Plan.  The holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

**3.6     Class 6  Secured Claim of the Estate of  Camille Corte**

### 3.6.1 *Classification*.

Class 6 consists of the Secured Claim of the Estate of Camille Corte.

### 3.6.2 *Treatment*.

Each holder of a Class 6 Claim shall be treated in accordance with Section 4.1 of this Plan.

### 3.6.3 *Impairment and Voting*.

Class 6 is Impaired by the Plan.  The holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

**3.7** **_Class 7 Secured Claim of Fidelity Bank_**

      3.7.1   *Classification*.

Class 7 consists of the Secured Claim of Fidelity Bank.

      3.7.2   *Treatment*.

Each holder of a Class 7 Claim shall be treated in accordance with Section 4.1 of this Plan.

      3.7.3   *Impairment and Voting*.

Class 7 is Impaired by the Plan. The holders of Class 7 Claims are entitled to vote to accept or reject the Plan.

**3.8** **_Class 8 Secured Claim of First National Bank_**

      3.8.1   *Classification*.

Class 8 consists of the Secured Claim of First National Bank.

      3.8.2   *Treatment*.

Each holder of a Class 8 Claim shall be treated in accordance with Section 4.1 of this Plan, except with respect to the property located at 2184 252 HWY 70, Plattenville, Louisiana ("Plattenville Property").

      The Plattenville Property securing this creditor's Claim shall be transferred to this creditor. The Debtors will execute any and all documents reasonably requested by First National Bank in order to transfer the Plattenville Property securing this creditor's Claim to this creditor. Furthermore, the automatic stay shall be terminated upon the confirmation order becoming a Final Order and this creditor may institute and pursue foreclosure procedures against the Plattenville Property securing its Claim if this creditor wishes to do so.

The Debtors and First National Bank shall attempt to reach an agreement with respect to the fair market value of the Plattenville Property securing this creditor's Claim; however, if they are unable to reach an agreement within 90 days of the Confirmation Hearing, the Bankruptcy Court shall determine the fair market value of the Plattenville Property. The fair market value of the Plattenville Property shall be deducted from this creditor's Claim. If a deficiency exists, then the deficiency claim held by this creditor shall be treated in accordance with Section 4.1 of the Plan.

3.8.3  *Impairment and Voting*.

Class 8 is Impaired by the Plan. The holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

**3.9    *Class 9 Secured Claim of Ford Motor Credit***

3.9.1  *Classification*.

Class 9 consists of the Secured Claim of Ford Motor Credit.

3.9.2  *Treatment*.

Each holder of a Class 9 Claim shall be treated in accordance with Section 4.3 of this Plan.

3.9.3  *Impairment and Voting*.

Class 9 is Impaired by the Plan. The holders of Class 9 Claims are entitled to vote to accept or reject the Plan.

**3.10    *Class 10  Secured Claim of G.M.A.C.***

3.10.1  *Classification*.

Class 10 consists of the Secured Claim of G.M.A.C.

3.10.2  *Treatment*.

Each holder of a Class 10 Claim shall be treated in accordance with Section 4.3 of this Plan.

3.10.3 *Impairment and Voting.*

Class 10 is Impaired by the Plan. The holders of Class 10 Claims are entitled to vote to accept or reject the Plan.

**3.11    *Class 11 Secured Claim of Guaranty Bank***

3.11.1 *Classification.*

Class 11 consists of the Secured Claim of Guaranty Bank.

3.11.2 *Treatment.*

Each holder of a Class 11 Claim shall be treated in accordance with Section 4.1 of this Plan.

3.11.3 *Impairment and Voting.*

Class 11 is Impaired by the Plan. The holders of Class 11 Claims are entitled to vote to accept or reject the Plan.

**3.12    *Class 12 Secured Claim of Iberville Bank***

3.12.1 *Classification.*

Class 12 consists of the Secured Claim of Iberville Bank.

3.12.2 *Treatment.*

Each holder of a Class 12 Claim shall be treated in accordance with Section 4.1 of this Plan.

3.12.3 *Impairment and Voting.*

Class 12 is Impaired by the Plan.  The holders of Class 12 Claims are entitled to vote to accept or reject the Plan.

**3.13**    *Class 13 Secured Claim of First Financial Capital Corporation f/k/a Irwin Franchise Capital and Sovereign Bank.*

3.13.1  *Classification.*

Class 13 consists of the Secured Claim of First Financial Capital Corporation f/k/a Irwin Franchise Capital and Sovereign Bank.

3.13.2  *Treatment.*

Each holder of a Class 13 Claim shall be treated in accordance with Section 4.2 of this Plan.

3.13.3  *Impairment and Voting.*

Class 13 is Impaired by the Plan. The holders of Class 13 Claims are entitled to vote to accept or reject the Plan.

**3.14**    *Class 14 Secured Claim of Main Street Bank*

3.14.1  *Classification.*

Class 14 consists of the Secured Claim of Main Street Bank.

3.14.2  *Treatment.*

Each holder of a Class 14 Claim shall be treated in accordance with Section 4.3 of this Plan.

3.14.3  *Impairment and Voting.*

Class 14 is Impaired by the Plan. The holders of Class 14 Claims are entitled to vote to accept or reject the Plan.

**3.15**    *Class 15  Secured Claim of M C Bank*

3.15.1  *Classification.*

Class 15 consists of the Secured Claim of M C Bank.

3.15.2 *Treatment*.

Each holder of a Class 15 Claim shall be treated in accordance with Section 4.1 of this Plan.

3.15.3 *Impairment and Voting*.

Class 15 is Impaired by the Plan. The holders of Class 15 Claims are entitled to vote to accept or reject the Plan.

**3.16    *Class 16 Secured Claim of Norsco Management***

3.16.1 *Classification*.

Class 16 consists of the Secured Claim of Norsco Management.

3.16.2 *Treatment*.

The Debtors have or will transfer the property located at the Panama City, Florida and Lynn Haven, Florida locations securing this Creditors' Claim, as well as other personal property, consisting of furniture, fixtures and equipment and consumable merchandise, to this Creditor in full and complete satisfaction of this Creditor's Claim. If the transfer and conveyance described above does not occur prior to confirmation, then the Court shall retain jurisdiction to effectuate such transfer. The property securing this Creditor's Claim and other property to be transferred shall not revest in the Reorganized Debtors, but shall remain property of the Estates until such sale is perfected. This creditor has been satisfied in full pursuant to a sales agreement entered into and executed prior to confirmation.

3.16.3 *Impairment and Voting*.

Class 16 is Unimpaired by the Plan. The holders of Class 16 Claims are not entitled to vote to accept or reject the Plan.

**3.17**     *Class 17 Secured Claim of Sabine Bank*

3.17.1  *Classification*.

Class 17 consists of the Secured Claim of Sabine Bank.

3.17.2  *Treatment*.

The Debtors have or will transfer the property located at the Winnfield, Louisiana location securing this Creditors' Claim, to this Creditor in full and complete satisfaction of this Creditor's Claim. If the transfer and conveyance described above does not occur prior to confirmation, then the Court shall retain jurisdiction to effectuate such transfer. The property securing this Creditor's Claim shall not revest in the Reorganized Debtors, but shall remain property of the Estates until such sale is perfected. This creditor has been satisfied in full pursuant to a sales agreement entered into and executed prior to confirmation.

3.17.3  *Impairment and Voting*.

Class 17 is Unimpaired by the Plan. The holders of Class 17 Claims are not entitled to vote to accept or reject the Plan.

**3.18**     *Class 18 Secured Claim of Fidelity Bank, as successor to Source Bidco*

3.18.1  *Classification*.

Class 18 consists of the Secured Claim of Fidelity Bank, as successor to Source Bidco.

3.18.2  *Treatment*.

Each holder of a Class 18 Claim shall be treated in accordance with Section 4.1 of this Plan.

3.18.3 *Impairment and Voting.*

Class 18 is Impaired by the Plan. The holders of Class 18 Claims are entitled to vote to accept or reject the Plan.

**3.19** *Class 19 Secured Claim of Trustmark Bank*

3.19.1 *Classification.*

Class 19 consists of the Secured Claim of Trustmark Bank.

3.19.2 *Treatment.*

Each holder of a Class 19 Claim shall be treated in accordance with Section 4.3 of this Plan.

3.19.3 *Impairment and Voting.*

Class 19 is Impaired by the Plan. The holders of Class 19 Claims are entitled to vote to accept or reject the Plan.

**3.20** *Class 20 General Unsecured Claims.*

3.20.1 *Classification*

Class 20 consists of all Allowed General Unsecured Claims.

3.20.2 *Treatment*

Each holder of an Allowed Class 20 General Unsecured Claim will be paid one hundred (100%) percent of their Allowed Claims, without interest. The Allowed Class 20 Claims shall be paid in fifteen (15) equal installments with the first installment to be made no later than December 31, 2010; and the next installment no later than June 20, 2011; the third installment no later than December 31, 2011; and twelve (12) subsequent equal quarterly installments in full satisfaction of these Creditors' Claims.

### 3.20.3  *Impairment and Voting*

Class 20 is Impaired by the Plan. The holders of Class 20 Claims are entitled to vote to accept or reject the Plan.

**3.21**   ***Class 21 Convenience Claims***.

### 3.21.1   *Classification*

Class 21 consists of the holders of Convenience Claims.

### 3.21.2   *Treatment*

Each holder of an Allowed Convenience Claim will be paid Cash equal to one hundred (100%) of the Allowed Amount of such holder's Convenience Claim on the later of: (a) sixty (60) days after the Effective Date, or (b) the date such Convenience Claim becomes an Allowed Claim.   Provided that all Creditors shall have the option to notify the Debtors of their election to reduce their claim to $1,000.00 and be treated as holder of an Allowed Convenience Claim, within forty five (45) days of the Effective Date.

### 3.21.3  *Impairment and Voting*

Class 21 is impaired by the Plan. The holders of Class 21 Claims are entitled to vote to accept or reject the Plan.

**3.22**   ***Class 22  Interests***

### 3.22.1  *Classification.*

Class 22 consists of the Interests in the Debtors.

### 3.22.2  *Treatment.*

The holder of the Interests in the Debtors shall retain such Interests in the Debtors.   The holder of Interests, the member of Fundamental, shall not receive any

dividends, loans or other distributions based upon his membership interest in Fundamental until all Allowed Claims have been satisfied in full. Provided further that if there are any adverse tax consequences resulting from the "pass through" tax attributes of the limited liability company under federal tax laws, then the Debtors shall reimburse the sole member to the extent of any such tax liability resulting from the Interest upon the filing of a tax return by the member.

### 3.22.3 *Impairment and Voting*

Class 22 is impaired by the Plan. The Holders of Class 22 Allowed Interests are deemed to have accepted the Plan.

# ARTICLE 4

# TREATMENT OF SECURED CLAIMS

**4.1** **Treatment of Property Lenders' Secured Claims consisting of Classes 6, 7, 8, 11, 12, 15, and 18.**

### 4.1.1 *General Terms*

The Property Lenders' Secured Claims, consisting of Classes 6, 7, 8, 11, 12, 15, and 18, to the extent they become Allowed Claims, shall be paid in full, with the Debtors making payments based upon a twenty-five (25) year amortization schedule of their Capitalized Claim as determined in accordance with Article 4.4 of the Plan, with interest accruing at: (a) the Prime Rate plus 2.75% percent per annum, or (b) such rate, as determined by the Bankruptcy Court pursuant to 11 U.S.C. § 1129(b)(2)(A)(i)(II), that provides each holder of a Claim of this Class with deferred cash payments totaling at least the Allowed Amount of such Claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the Estates' interest in such property, or

(c) upon such other terms as may be mutually agreed upon between the holder of the Property Lenders' Secured Claim and the Reorganized Debtors.

The Allowed Claims in Classes 6, 7, 8, 11, 12, 15, and 18 shall be paid in twenty-one (21) equal quarterly annum installments, with the first installment being due no later than December 31, 2010; and twenty (20) subsequent equal quarterly installments based upon the above amortization schedule, with the outstanding principal balance, together with all accrued and unpaid interest, due and payable on the fifth (5th) annual anniversary of the first payment or by December 31, 2015 (but if such first payment anniversary date is not a Business Day, then on the next Business Day).

### 4.1.2    *Collateral*

The holders of the Property Lenders' Secured Claims shall retain all of their Liens and security interests in the Debtors' Assets granted to them pursuant to their applicable loan documents, with the same validity, priority and extent that existed on the Petition Date, to secure the timely payment of their Allowed Property Lenders' Secured Claims.  Section 552 of the Bankruptcy Code shall not apply to limit any of the Property Lenders' liens and security interests.

### **4.2**    ***Treatment of Equipment and Property Lenders, Classes  4 and 13.***

#### 4.2.1.  *General Terms*

The Equipment and Property Lenders' Secured Claims, consisting of Classes 4 and 13,  if and to the extent they become Allowed Claims, shall be paid in full, with the Debtors making payments based upon a twenty (20) year amortization schedule of their Capitalized Claims as determined in accordance with Article 4.4 of the Plan, with interest accruing at: (a) the Prime Rate plus 2.75% percent per annum, or (b) such rate, as

determined by the Bankruptcy Court pursuant to 11 U.S.C. § 1129(b)(2)(A)(i)(II), that provides each holder of a claim of this class with deferred cash payments totaling at least the Allowed Amount of such Claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the Estates' interest in such property, or (c) upon such other terms as may be mutually agreed upon between the holder of the Equipment and Property Lenders' Secured Claim and the Reorganized Debtors.

The Allowed Claims in Classes 4 and 14 shall be paid in twenty-one (21) equal quarterly annum installments, with the first installment being due no later than December 31, 2010; and twenty (20) subsequent equal quarterly installments based upon the above amortization schedule, with the outstanding principal balance, together with all accrued and unpaid interest, due and payable on the fifth (5th) annual anniversary of the first payment or by December 31, 2015 (but if such first payment anniversary date is not a Business Day, then on the next Business Day).

4.2.2.  *Collateral*

The holders of the Equipment and Property Lenders' Secured Claims shall retain all of their liens and security interests in the Debtors' Assets granted to them pursuant to their applicable loan documents, with the same validity, priority and extent that existed on the Petition Date, to secure the timely payment of their Allowed Equipment and Property Lenders' Secured Claims.  Section 552 of the Bankruptcy Code shall not apply to limit any of the holders' of Equipment and Property Lenders' Secured Claims liens and security interests.

**4.3**    *Equipment Lenders' Secured Claims, Classes 5, 9, 10, 14 and 19*

4.3.1    *General Terms*

The Equipment Lenders' Secured Claims, consisting of Classes 5, 9, 10, 14 and 19, if and to the extent they become Allowed Claims, shall be paid in full, with the Debtors making payments based upon a five (5) year amortization schedule with interest accruing at:  (a) the Prime Rate plus 2.75% percent per annum, or (b) such rate, as determined by the Bankruptcy Court pursuant to 11 U.S.C. § 1129(b)(2)(A)(i)(II), that provides each holder of a claim of this class with deferred cash payments totaling at least the Allowed Amount of such Claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the Estates' interest in such property, or (c) upon such other terms as may be mutually agreed upon between the holder of the Equipment Lenders' Secured Claim and the Reorganized Debtors.

The Allowed Claims in Classes 5, 9, 10, 14 and 19 shall be paid in twenty-one (21) equal quarterly annum installments, with the first installment being due no later than December 31, 2010; and twenty (20) subsequent equal quarterly installments based upon the above amortization schedule, with the outstanding principal balance, together with all accrued and unpaid interest, due and payable on the fifth (5th) annual anniversary of the first payment or by December 31, 2015 (but if such first payment anniversary date is not a Business Day, then on the next Business Day).

4.3.2    *Collateral*

The holders of the Equipment Lenders' Secured Claims shall retain all of their liens and security interests in the Debtors' Assets granted to them pursuant to their applicable loan documents, with the same validity, priority and extent that existed on the

Petition Date, to secure the timely payment of their Allowed Equipment Lenders' Secured Claims. Section 552 of the Bankruptcy Code shall not apply to limit any of the holders' of the Equipment Lenders' Secured Claims Liens and security interests.

**4.4** *Determination and Allowance of Capitalized Claims*

Within ten (10) days of the filing of the Notice of the Effective Date in accordance with Article 11.2 of the Plan, the Secured Creditors shall submit to the Debtors' attorneys and the Chief Restructuring Officer, their respective calculations concerning their Capitalized Claims to include an itemization of the outstanding principal amount, interest accrued through the Effective Date and allowable attorneys' fees and expenses.

If a Secured Creditor fails to provide such timely calculation and itemization to the Debtors' attorney and Chief Restructuring Officer, then such Secured Creditor shall be limited to the amount of the Claim set forth in its Proof of Claim filed prior to the Claim Bar Date as set forth in the *Order Establishing Proof of Claim Bar Date and Approving the Bar Date Notice* [P-219]. Provided that, if such Secured Creditor did not timely file a Proof of Claim, then its Claim shall be limited to the amount set forth in the Bankruptcy Schedules filed by the Debtors.

If the Debtors dispute the amount of either the submitted Capitalized Claims, the Proofs of Claim filed by the Secured Creditors, or the Claims scheduled by the Debtors, then the Debtors shall have twenty-five (25) days after the filing of the Notice of Effective Date to file a motion with the Bankruptcy Court to resolve any disputes concerning the Secured Creditors' Allowed or Capitalized Claims.

The Bankruptcy Court shall retain jurisdiction to resolve any disputes concerning the allowance of any Secured Creditor's Claims and the determination of any Secured Creditor's Allowed Claim or Capitalized Claim.

# ARTICLE 5

## ACCEPTANCE OR REJECTION OF THE PLAN

**5.1** *Impaired Classes Vote.* Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

**5.2** *Acceptance by Impaired Classes of Claims.* Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any voting procedures order entered by the Bankruptcy Court.

**5.3** *Designation of Classes Entitled to Vote.* Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 18, 19, 20, 21 and 22 are Impaired, and the holders of Claims in those Classes are entitled to vote on the Plan.

**5.4** *Nonconsensual Confirmation.* With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtors will request that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

# ARTICLE 6

## CONTRACTS AND UNEXPIRED LEASES

**6.1** *Assumption*. Each executory contract or unexpired lease of the Debtors that has not expired by its own terms before the Effective Date or previously been assumed by the applicable Debtor in Possession pursuant to an order of the Bankruptcy Court, shall be assumed by the applicable Debtor as of the Effective Date pursuant to Sections 365 and 1123 of the Bankruptcy Code, except for any executory contract or unexpired lease (i) that is listed on a "Schedule of Executory Contracts and Unexpired Leases to be Rejected" (to be Filed on or before the day that is ten (10) days prior to the Confirmation Hearing), (ii) that has been previously rejected by the Debtor in Possession pursuant to an order of the Bankruptcy Court, (iii) as to which a motion for rejection of such executory contract or unexpired lease is filed prior to the Effective Date, or (iv) added to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" prior to the Effective Date. Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered in connection with the Plan or any such Exhibit creates any obligation or liability on the part of the Debtors, the Reorganized Debtors, or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as may otherwise be provided in the Plan.

Any executory contract or unexpired lease assumed pursuant to the Plan shall be and hereby is assumed by the applicable Debtor as of the Effective Date and shall be fully enforceable by the applicable Debtor in accordance with its terms thereof, and shall include all written modifications, amendments, supplements of said executory contract or

unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises. Listing a contract or lease on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" is not deemed an admission by the applicable Debtor or Reorganized Debtor that such contract is an executory contract or unexpired lease or that the Debtor or Reorganized Debtor has any liability thereunder.

The Debtors reserve the right at any time before the Effective Date to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to: (a) delete any executory contract or unexpired lease listed on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected", thus providing for its assumption under the Plan, or (b) add any executory contract or unexpired lease to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected", thus providing for its rejection under the Plan. The Debtors shall provide notice of any such amendment of the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to the party to the affected executory contract and unexpired lease.

**6.2    *Cure Payments, Compensation for Pecuniary Loss, and Adequate Assurance*.** All payments, including any and all cure payments, adequate assurance or compensation for actual pecuniary loss, that are required to be paid or provided by Section 365(b)(1)(A)-(C) of the Bankruptcy Code (collectively, all cure payments, and any and all provisions for adequate assurance and/or compensation for actual pecuniary

loss due or required to be paid under Section 365(b)(1)(A)-(C) of the Bankruptcy Code, the "Cure Payments") for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtors, shall be made by the Reorganized Debtors on the Effective Date, if the amount of the Cure Payment is $5,000.00 or less. If the amount of the Cure Payment exceeds $5,000.00, then the lessor or other party to the executory contract shall receive a payment of $5,000.00 on or immediately following the Effective Date, shall receive fifty percent (50%) of the balance owed for the required Cure Payment on or before ninety (90) days after the Effective Date, and shall receive the balance owed for the required Cure Payment within one hundred eighty (180) days after the Effective Date. **Any non-Debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to assumption of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must file a written objection to the assumption of such executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan.** Unless the non-debtor party to any executory contract or unexpired lease to be assumed files and serves on the respective Debtor and its counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the

executory contract and/or unexpired lease shall be deemed cured as of the Effective Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtors and the Reorganized Debtors, in connection with such assumption of the executory contract or unexpired lease. Any Claims for Cure Payments not Filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the applicable Debtor, its Estate, the applicable Reorganized Debtor, and its Assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the applicable Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and, (b) in the discretion of the applicable Debtor, the Debtor (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtor may reject such executory contract or unexpired lease as of the Effective Date. The Reorganized Debtor shall make any Cure Payment on the later of the Effective Date and the date such Cure Payment is due pursuant to a Final Order, provided however that the applicable Reorganized Debtor shall have five (5) Business Days after any order determining the amount of a disputed Cure Payment becomes a Final Order in which to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to provide for the rejection of such executory contract or unexpired lease and, in such an

event, such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

**6.3     *Effect of Confirmation Order on Executory Contracts and Unexpired Leases*.** Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumptions pursuant to Section 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the applicable Debtor, its estate, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtors, no Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption is in the best interest of the applicable Debtor and its estate, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed under the Plan or during the Chapter 11 Cases constitute valid contracts and leases, as applicable, enforceable by the Debtors against the non-Debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Cases.

Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective

Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the estates.

6.4 ***Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan***. Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be Filed within thirty (30) days after the Effective Date or, with respect to any executory contracts or unexpired leases which are rejected after the Effective Date by amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," no later than thirty (30) days after the date of such amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," or such Claims will be forever barred and unenforceable against the Debtors, Reorganized Debtors, and their Assets and the holders of any such Claims are barred from receiving any distributions under the Plan.

6.5 ***Compensation and Benefits Program.*** Unless otherwise agreed to by the affected parties, or modified by order of the Bankruptcy Court, all of the Debtors' obligations under employment and severance policies, and all compensation and benefit plans, policies, and programs shall be treated as though they are executory contracts that are deemed assumed under this Plan.

# ARTICLE 7

# DISTRIBUTIONS UNDER THE PLAN

7.1 ***Distributions under the Plan***. The Reorganized Debtors or, at the option of the Reorganized Debtors, any distribution agent of the Reorganized Debtors shall make all distributions to the holders of Allowed Claims and Allowed Interests that are

required under this Plan.  Each distribution shall be made on a Distribution Date. Distributions to be made on the Distribution Date shall be deemed actually made on the Distribution Date if made either (a) on the Distribution Date or (b) as soon as practicable thereafter.  If any litigation now pending is resolved by Final Order or settlement, and any of the Debtors are ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

7.2    ***Record Date for Voting on Plan***.  The transfer registers for each of the Classes of Claims and Interests as maintained by the Debtors or any third party, including the voting agent, shall be deemed closed on the date of entry of an order of the Bankruptcy Court approving the Disclosure Statement (or, with respect to any Class, any later date to which the Debtors agree) for purposes of voting on the Plan, and there shall be no further changes to reflect any new record holders of any Claims or Interests for purposes of voting on the Plan.

7.3    ***Delivery of Distributions***.  Except as otherwise provided in this Plan, distributions to a holder of an Allowed Claim or Allowed Interest shall be made at the address of such holder as indicated on the Debtors' records.  In the event that any such distribution is returned as undeliverable, the Reorganized Debtors shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Reorganized Debtors have determined

such then current address, *provided, however*, that if any distribution remains unclaimed after the first anniversary after distribution, such distribution shall be deemed unclaimed property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtors.  In such event, the Claim of the holder for such distribution shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to such distribution under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim.  Checks issued by the Reorganized Debtors in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.

7.4     *Third Party Agreements*.  The distributions to the various Classes of Claims or Interests hereunder will not affect the right of any Entity to levy, garnish, attach, or employ any other legal process with respect to such distributions by reason of any claimed subordination or lien priority rights or otherwise.  All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

7.5     *Manner of Payment Under the Plan*.  At the option of the Reorganized Debtors, any payment in Cash to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

7.6     *No Fractional Distributions*.  No fractional dollars shall be distributed under the Plan.  For purposes of distributions, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.

**7.7** *Withholding and Reporting*. The Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

**7.8** *Disputed Claims Reserve.* On the Effective Date, the Reorganized Debtors shall establish a Disputed Claims Reserve account to pay any Disputed Claims in the event such Claims become Allowed or a portion of such Claims become Allowed, after a Final Order. The Debtors shall deposit into this account an amount equal to the disbursement that such Claimant would be entitled to or would receive if its Claim were Allowed in full. If such Claimant's Disputed Claim is disallowed in its entirety, then all funds maintained in the Disputed Claims Reserve on account of such Disputed Claim shall immediately be transferred to the account of the Debtors and the Debtors shall cease making any further distributions to the Disputed Claims Reserve on account of the Disputed Claim. If such Claimant's Disputed Claim is allowed in its entirety, then all funds maintained in the Disputed Claims Reserve for the benefit of this Disputed Claim shall immediately be turned over to the Claimant. If a Disputed Claim is only partially Allowed, then the Claimant shall receive immediate disbursement equal to the amount that this Claimant would have received based upon the portion of the Claim that was Allowed. The Debtors shall then commence making direct payments to the Claimant in such amount equal to the amount that the Claimant is entitled to pursuant to the confirmed Plan.

# ARTICLE 8

# MEANS FOR EXECUTION AND

# IMPLEMENTATION OF THE PLAN

**8.1** *Generally*. Upon confirmation of this Plan, the Debtors shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtors are authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**8.2** *Entity Action.* The Chief Restructuring Officer of the Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan, or to transfer, sell or assign any rights, property or assets of the Debtors.

**8.3** *Status of Existing Liens of Priority Tax Claims, Property Tax Claims, Property Lenders' Secured Claims, Equipment and Property Lenders' Secured Claims, and Equipment Lenders' Secured Claims.* Unless otherwise provided in this Plan, on the Effective Date, all existing Liens held by holders of Priority Tax Claims, Property Tax Claims, Property Lenders' Secured Claims, Equipment and Property Lenders'

Secured Claims, and Equipment Lenders' Secured Claims on the Debtors' Assets shall retain the same ranking, validity, priority and extent that existed on the Petition Date. Section 552 of the Bankruptcy Code shall not apply to limit any of the holders of Secured Claims liens and security interests. All other Liens and encumbrances shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.

Notwithstanding any other provisions in the Plan, if a creditor has a prepetition Lien on Collateral that attaches to subsequently acquired property, such as inventory, equipment, furniture, fixtures, or other generally described collateral, then such creditor's Lien shall continue to attach to the such after-acquired or subsequently-acquired property to the extent permitted by applicable non-bankruptcy law.

**8.4** *Plan Documents.* The Plan and all documents to implement this Plan and the transactions contemplated herein shall be in form and substance satisfactory to the Reorganized Debtors.

**8.5** *Effectuating Documents and Further Transactions.* The Chief Restructuring Officer of the Debtors and the Reorganized Debtors shall be authorized on behalf of the Debtors and the Reorganized Debtors to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and the Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

**8.6** *No Dividends, Loans or Other Disbursements to Interests.* There shall be no dividends, loans or other disbursements, other then the compensation and benefits

approved by the Court, with respect to the equity or membership interests of the Debtors or Reorganized Debtors until all Allowed Claims under this Plan have been paid in full. However, in the event there are any adverse tax consequences toward the member(s) resulting in any tax liabilities owed by such member(s), then the Debtors shall be responsible for the satisfaction of such tax liabilities.

**8.7** ***Management of the Reorganized Debtors.*** Subsequent to the Effective Date of this Plan, David M. Bagley, as the Chief Restructuring Officer of the Reorganized Debtors, shall retain all of the same duties, rights and obligations as set forth in the *Final Order Authorizing the Employment and Retention of Morris-Anderson & Associates, Ltd. and David Bagley as Chief Restructuring Officer* [P-148]. All distributions under the Plan must be authorized by David M. Bagley and/or MorrisAnderson & Associates, Ltd.

David Bagley shall be paid in accordance with the aforesaid order of the Court authorizing the employment and retention of the Restructuring Officer. Mr. Bagley will remain Chief Restructuring Officer through the first to occur of: (1) payment in full of all Claims due under the Plan, extinguishing all debts detailed within the Plan; or (2) the sale of the assets of the Entities; or (3) the conversion of the cases to Chapter 7 cases; or (4) the replacement or removal of MorrisAnderson and Mr. Bagley as Chief Restructuring Officer by order of the Bankruptcy Court after notice and hearing. Mr. Bagley shall remain as the Chief Restructuring Officer until either a successor Chief Restructuring Officer is employed or a trustee is appointed.

# ARTICLE 9

## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

**9.1** *Objections to Claims and Interests; Prosecution of Disputed Claims and Interests*. The Debtors and, after the Effective Date, the Reorganized Debtors, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 Cases, and such objections may be litigated to Final Order by the Debtors or Reorganized Debtors, as applicable, or compromised and settled in accordance with the business judgment of the Debtors or Reorganized Debtors, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be Filed no later than one hundred and twenty (120) days after the Effective Date, subject to any extensions granted pursuant to further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtors without notice upon *ex parte* motion.

**9.2** *Estimation of Disputed Claims and Interests*. The Debtors and, after the Effective Date, the Reorganized Debtors may at any time request that the Bankruptcy Court estimate for all purposes, including distribution under this Plan and including payments to the Disputed Claims Reserve account, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtors or the Reorganized Debtors have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

**9.3** *No Distribution on Account of Disputed Claims and Interests.* Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order. The Reorganized Debtors shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims and Allowed Interests in a particular Class to be held in the Disputed Claims Reserve for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if their respective Claims and Interests were ultimately to be allowed in full by Final Order.

## ARTICLE 10

## EFFECT OF CONFIRMATION OF PLAN

**10.1** *Vesting of Assets and Retained Causes of Action.* Except as otherwise provided herein, on the Effective Date, pursuant to Section 1141(b) of the Bankruptcy Code, all Assets of the Debtors in Possession and their respective Estates shall vest in the Reorganized Debtors free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order. From and after the Effective Date, the Reorganized Debtors may operate their businesses and may own, use, acquire and dispose of Assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Cases had never been filed. The Debtors will not pursue any Avoidance Claims for affirmative recoveries or assert Avoidance Claims against the holders of

General Unsecured Claims with respect to such General Unsecured Claims, but reserve all such Avoidance Claims for defensive purposes and may assert Avoidance Claims as defenses against other Claims filed against any of the Debtors.

Except as otherwise specifically provided in this Plan, the Reorganized Debtors shall retain all rights and are authorized to commence and pursue, as the Reorganized Debtors deem appropriate, any and all claims and Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, and including but not limited to, the claims and Causes of Action specified in the Plan. Due to the size and scope of the Debtors' business operations and the multitude of business transactions therein, there may be other claims and Causes of Action that currently exist or may subsequently arise, all of which other claims and Causes of Action shall revest in the Reorganized Debtors. The Reorganized Debtors do not intend, and it should not be assumed that because any existing or potential claims or Causes of Action have not yet been pursued by the Debtors, that any such claims or Causes or Action have been waived or will not be pursued. Under this Plan, the Reorganized Debtors retain all rights to pursue any and all claims and Causes of Action to the extent the Reorganized Debtors deem appropriate (under any theory of law or equity, including, without limitation, the Bankruptcy Code and any applicable local, state, or federal law, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases) except as otherwise specifically provided in this Plan.

    **10.2   *Binding Effect.*** Subject to the occurrence of the Effective Date on or before the deadline set forth in Section 11.1 of the Plan, on and after the occurrence of

the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or an Interest in any of the Debtors and such holder's successors and assigns, whether or not such holder's Claim or Interest is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

**10.3** *Discharge of the Debtors*. Except as otherwise specifically provided in this Plan or in the Confirmation Order, the rights afforded in this Plan and the treatment of the Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtors, the Debtors in Possession, the Reorganized Debtors or the Assets, properties, or property of the Debtors, the Debtors in Possession or the Reorganized Debtors of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtors and the Debtors in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, or any conduct for which any of the Debtors may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtors shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan and (b) Claims and Interests that are not canceled and discharged pursuant to specific and

express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Entities are precluded and forever barred from asserting against the Debtors, the Debtors in Possession or the Reorganized Debtors, or the Assets, properties, or property of the Debtors, the Debtors in Possession or the Reorganized Debtors of any nature whatsoever any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan, and then only to the extent and in manner specifically and expressly provided in the Plan.

**10.4** *Indemnification Obligations*. Subject to the occurrence of the Effective Date on or before the deadline set forth in Section 11.1 of the Plan, the obligations of the Debtors to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the Debtors, shall be deemed to be and treated as executory contracts that are assumed by the Debtors and assigned to the Reorganized Debtors pursuant to the Plan and section 365 of the Bankruptcy Code and shall not be affected by or discharged by this Plan. Nothing in the Plan shall be deemed

to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

10.5    ***Term of Certain Injunctions***.  Unless otherwise provided herein or in the Confirmation Order, all of the injunctions and/or stays provided for in, or in connection with, the Chapter 11 Cases, whether pursuant to Section 105, Section 362, or any other provision of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, the Debtors may seek such further orders as they may deem necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

10.6    ***No Successor Liability***.  Except as otherwise specifically provided in the Plan or the Confirmation Order, neither the Debtors nor the Reorganized Debtors will have any responsibilities, pursuant to the Plan or otherwise, for any liabilities or obligations of the Debtors or any of the Debtors' past or present subsidiaries relating to or arising out of the operations of or Assets of the Debtors or any of the Debtors' past or present subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date.  The Reorganized Debtors shall have no successor or transferee liability of any kind or character, for any Claims; *provided, however*, that the Reorganized Debtors shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in the Plan.

**10.7** *Preservation of All Causes of Action Not Expressly Settled or Released.*

For the avoidance of doubt, and without limiting or restricting any other provisions of this Plan, including but not limited to Section 10.1 "Vesting of Assets and Retained Causes of Action," unless a claim or Cause of Action against a Creditor or other Entity is expressly and specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Reorganized Debtors expressly reserve such claim or Cause of Action for adjudication or pursuit by the Reorganized Debtors after the Effective Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise. The Reorganized Debtors expressly reserve the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtors or the Debtors in Possession, as trustees for or on behalf of the Creditors, not specifically and expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtors shall be representatives of the Estate appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the

Debtors, should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtors' Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

# ARTICLE 11

## THE EFFECTIVE DATE OF THE PLAN

**11.1** *Conditions to Occurrence of Effective Date of Plan.* The "Effective Date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the following conditions shall have been satisfied (or shall be satisfied contemporaneously with or immediately upon the occurrence of the Effective Date) or waived by the Debtors:

11.1.1 The Confirmation Order shall have become a Final Order; *provided, however,* that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the option of the Debtors, unless the effectiveness of the Confirmation Order has been stayed or vacated.

11.1.2 The Debtors and Franchisor shall have executed and entered into an agreement either re-instating the prepetition franchise agreements concerning the various stores owned by the Debtors or entered into new agreements authorizing the

Debtors to operate its stores as "Popeye's" on terms acceptable to the Debtors and the Franchisor.

11.1.3  The Confirmation Order shall have been entered.

11.1.4  The Confirmation Order shall be unstayed and shall have become a Final Order.

11.1.5 The Plan and all documents to implement this Plan and the transactions contemplated herein shall be in form and substance satisfactory to the Proponents.

11.1.6 All Professional charges due to or incurred by Professionals through the Effective Date not previously paid pursuant to interim and final orders shall have been paid into and shall be held in escrow, free and clear of liens, claims and encumbrances of Claimants and holders of Interests (other than the rights of Professionals), until due and payable in accordance with applicable Bankruptcy Court order.

11.1.7 All payments of Cash due under the Plan on the Effective Date shall have been made.

**11.2**   *Filing of Notice of Effective Date.*   Within two (2) Business Days of the occurrence of the Effective Date, the Reorganized Debtors shall file a notice of occurrence of the Effective Date signed by the counsel for the Debtors in Possession and, if different, counsel to the Reorganized Debtors in the record of the Bankruptcy Court reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtors and any other person whose consent or waiver is

required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

**11.3** ***Revocation of Confirmation Order or Withdrawal of Plan.*** The Debtors may revoke or withdraw the Plan subsequent to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Cases prior to the Effective Date, in which case the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court. In such event, the Plan or Modified Plan and the Confirmation Order shall be of no further force or effect and, the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and all the Debtors' respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtors' rights and claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtors or any other persons or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors or any other persons.

# ARTICLE 12

# <u>MISCELLANEOUS PROVISIONS</u>

**12.1** ***Payment of Statutory Fees.*** All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid after the Effective Date by the Reorganized Debtors, as, when and in the amount as required by applicable law.

**12.2** *Dissolution of the Unsecured Creditors Committee*. On the Effective Date, the Unsecured Creditors Committee, if one has been appointed, and its Professionals shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases, and the Unsecured Creditors Committee shall be deemed dissolved.

**12.3** *Pension Plans*. For avoidance of doubt, on and after the Effective Date, pursuant to Section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within meaning of Section 1114 of the Bankruptcy Code), if any, at the level established in accordance with Section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which such Debtors had obligated themselves to provide such benefits.

**12.4** *Notice*. Any notices, requests, and demands required or permitted to be provided under this Plan, in order to be effective, must be in writing (including by electronic mail or facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made (a) if personally delivered or if delivered by electronic mail or courier service, when actually received by the Entity to whom such notice is sent, or (b) if deposited with the United States Postal Service (whether actually received or not), at the close of business on the third Business Day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, addressed to the appropriate Entity or Entities, at the address of such Entity or Entities set forth below (or at such other address as such Entity may designate by written notice to all other Entities listed below in accordance with this Section:

| If to the Debtors or Reorganized Debtors: | Heller, Draper, Hayden, Patrick & Horn, L.L.C. |
|---|---|
| David M. Bagley<br>MorrisAnderson & Associates<br>55 West Monroe St., Suite 2500<br>Chicago, IL 60603<br>Email: **dbagley@morrisanderson.com** | 650 Poydras Street, Suite 2500<br>New Orleans, LA 70130<br>Attn: William H. Patrick, Esq.<br>Email: wpatrick@hellerdraper.com<br>Attn: Barry Miller, Esq.<br>Email: bmiller@hellerdraper.com |

**12.5** *Headings*. The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

**12.6** *Governing Law*. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

**12.7** *Additional Documents*. The Debtors have the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtors deem necessary or appropriate in their reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

**12.8** *Compliance with Tax Requirements*. In connection with this Plan, the Debtors and the Reorganized Debtors will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

**12.9**    *Exemption from Transfer Taxes*.   Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such Section 1146(a) of the Bankruptcy Code.

**12.10**    *Further Authorizations*.   The Debtors, and after the Effective Date, the Reorganized Debtors, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

**12.11**    *Successors and Assigns.*   The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

**12.12**    *Modification and Amendment of the Plan.*   Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtors, and, after the Effective Date, by the Reorganized Debtors.

**12.13**    *Life Insurance Policies*. The Debtors will transfer or assign any and all rights and interests that they may have in any life insurance policy insuring the life of Stan Ware and which presently collateralizes a secured creditor's debt to the respective secured creditor.   The secured creditors will have the right to own the life insurance policy(ies) provided they continue to make the premium payments. The Debtors will no longer make premium payments on any such life insurance policies.

Subsequent to the entry of the Confirmation Order, a secured creditor with an interest in any respective life insurance policy insuring the life of Stan Ware must notify the Debtors that it elects to obtain ownership of such life insurance policy. Upon the election of the secured creditor to obtain ownership of such life insurance policy, the Debtors will execute any and all documents necessary and required by the secured creditor and/or the applicable insurance company to transfer or assign the life insurance policies to the secured creditor.

To the extent any life insurance policy has been assigned to more than one secured creditor, the Debtors will cooperate fully with such secured creditors to execute any and all documents necessary and required by the secured creditor(s) and/or the applicable insurance company to transfer or assign the policies to the secured creditor(s) in the proportions agreed to by such creditors or as directed by the Bankruptcy Court.

# ARTICLE 13

# <u>RETENTION OF JURISDICTION</u>

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Cases or this Plan, including, without limitation, the following:

**13.1** *Executory Contracts and Unexpired Leases.* To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtors are parties or with respect to which the Debtors may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to

review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

**13.2    *Causes of Action.*** To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtors after the Effective Date.

**13.3    *Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.*** To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

**13.4    *Enforcement/Modification of Plan.***

13.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

13.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

13.4.3 To hear and determine such other matters that may be set forth in the Plan and the Confirmation Order or that relate to any transaction required or contemplated by the Plan.

13.4.4  To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in the Chapter 11 Cases.

13.4.5  To hear and determine any issue relating to distributions under the Plan.

13.4.6  To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

13.4.7  To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

**13.5**  *Compensation of Professionals***.**  To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in Section 1129(a)(4) of the Bankruptcy Code.

**13.6**  *Settlements***.**  To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtors or the Reorganized Debtors.

**13.7** *Taxes.*  To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code.

**13.8** *506(b) Claims*. To determine the amounts, if any, of the reasonable fees, costs and other charges payable under Section 506(b) of the Bankruptcy Code.

**13.9** *Specific Purposes.* To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

**13.10** *Final Decrees.* To enter an order or final decree closing the Chapter 11 Cases.

## ARTICLE 14

## MARKETING AND SALE OF PROPERTY AND FRANCHISE

14.1 The Debtors and the Franchisor as well as the individual secured creditors of the Estate shall develop a sound and reasonable marketing strategy in order to profitably and reasonably sell the Debtors' franchise rights under its franchise agreement with AFCE as well as the property used in the operations of each store location. The Debtors will be required to sell their assets provided that the sale's price is sufficient to satisfy all secured claims securing the property to be sold as well as all allowed priority claims against the estate, including administrative priority claims, tax claims, and property tax claims.

14.2 The Debtors shall cause the marketing and sale of the Debtors' franchised restaurants in accordance with the following schedule:

> (a) On or before January 31, 2012, the Debtors shall prepare a complete and accurate bid book to be assembled for review and comment AFC Enterprises, LLC (the "Franchisor") prior to release for distribution to potential buyers; By February 6, 2012 a limited informational teaser will be sent to a group of prospects identified by AFC, Fundamental Provisions and their advisors

> (b) On or before February 6, 2012, a limited information "teaser" will be sent to a group of potential buyers identified by Franchisor, the Debtors and their advisors;

(c)     Commencing on February 17, 2012, the Debtors will districbute bid books to potential buyers upon receipt of a signed Non Disclosure Agreement from such potential buyer;

(d)     The Debtors shall request that any interested party submit a letter of intent by April 14, 2012; and

(e)     By June 30, 2012, potential buyers parties should have concluded due diligence and submitted a purchase agreement, with closing to occur within a reasonable time frame.

14.3     The Court will maintain jurisdiction in order to execute any orders necessary in order to effectuate the marketing plan and to transfer good and merchantable title to any purchasers.

**[signature on following page]**

Dated: July 22, 2010

**PLAN FILED BY:**

Fundamental Provisions, LLC
Thaxco, Inc.
Pollo, Inc.


BY:  */s/ David M. Bagley*
      David M. Bagley
      Chief Restructuring Officer


*/s/ Barry W. Miller*
William H. Patrick, III, La. Bar No. 10359
Barry W. Miller, La. Bar No.
Cherie Nobles, La. Bar No. 30476
**HELLER, DRAPER, HAYDEN,
PATRICK & HORN, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103
Telephone: 504-299-3300
Fax: 504-299-3399
Email:  wpatrick@hellerdraper.com
       bmiller@hellerdraper.com
       cnobles@hellerdraper.com